[No. 19211.  Department One.  July 14, 1925.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD
CLAYPOOL *et al., Appellants.*[1]

APPEAL (385)—REVIEW—ESTOPPEL TO ALLEGE ERROR—ERROR IN-
VITED.  Error can not be assigned on the admission of evidence
offered by the appellant.

ARSON (6)—OWNERSHIP OF PROPERTY.  In a prosecution for arson,
error can not be assigned in that the accused was not the owner
of the property upon which there was insurance.

CRIMINAL LAW (421)—QUESTIONS PRESENTED FOR REVIEW—IN-
STRUCTIONS AND FAILURE TO GIVE INSTRUCTIONS.  Error can not be
assigned on the failure to give requested instructions, refused because
covered by other instructions, when such other instructions are not
brought up in the record on appeal.

CRIMINAL LAW (185)—EVIDENCE—SUFFICIENCY—ALIBI.  In a prose-
cution for arson in the burning of a residence about sixteen miles
from the city of E, on the night of January 8, the whereabouts of
the accused on that night is for the jury, where it appears that one
of the defendants registered at a hotel in that city on the 8th, and
both registered and occupied the same room on the 9th, there being
no evidence that either was there on the night of the 8th.

CRIMINAL LAW (347-1)—NEW TRIAL—GROUNDS—MISCONDUCT OF
JURORS—RECEIVING EVIDENCE OUT OF COURT.  A new trial must be
granted where jurors read a newspaper article purporting to give
the views and opinion of the judge upon the facts, as stated by him
in ruling on motions made while the jury was excused from the
room.

Appeal from a judgment of the superior court for
Snohomish county, Alston, J., entered August 7, 1924,
upon a trial and conviction of arson.  Reversed.

*E. C. Dailey* and *A. E. Dailey,* for appellants.

*C. T. Roscoe* and *John C. Richards,* for respondent.

MITCHELL, J.—The defendants were charged with
the crime of arson in the second degree, found guilty

[1]Reported in 237 Pac. 730.

by a jury, and have appealed from a judgment on the verdict.

The building burned was a residence. The title of record to the property stood in the name of Edward Claypool. There was fire insurance on the building and contents, Edward Claypool being named as the insured.

On the appeal there are several assignments of error. The claim that the court erroneously admitted in evidence a copy of the policy of fire insurance is without merit, because the record shows that it was offered and allowed in evidence on the motion of the appellants and that it corresponds with the allegations of the information. The effect of another assignment is that John Claypool cannot be convicted, since the title of record to the property and the contract of insurance were in the name of Edward. But this action is not brought to recover on the contract of insurance, but to determine whether or not the appellants, or either of them, unlawfully burned the building. There was positive evidence at the trial that both appellants had been active in procuring the insurance and that John had stated he had an interest in the property. At the date of the insurance and afterwards, both appellants, who are unmarried, occupied the building as their residence.

It is assigned as error that the trial court refused to give six instructions requested by the appellants. They are in the record and bear the indorsement over the signature of the judge: "Refused by the court for the reason that, in so far as they correctly state the law, they have been covered by instructions given to the jury." Only two of the instructions given to the jury appear in the record. They are numbered 6 and 7. They are correct as applied to the features of the case to which they relate and, standing alone, they do not appear to purport to cover the whole law of the

case.   The situation is similar to that in the case of *Allen v. Farmers & Merchants Bank of Wenatchee,* 76 Wash. 51, 135 Pac. 621, wherein it was said:

"Only three of the instructions given by the court appear in the record.   These are numbered 17, 18 and 20.   Standing alone, they do not cover, nor purport to cover, the whole law of the case.   They are, however, unobjectionable as applied to the phases of the case to which they are manifestly directed.   Since none of the other instructions are set out in the record, we must assume that they correctly covered the law of the case in other particulars."

The building was burned on the night of January 8. It was situated on a public road, about sixteen miles from Everett, capable of being reached by automobile in about thirty minutes.   It appears that Edward Claypool registered at the Bay View Hotel in Everett on January 8.   There is no evidence that either of the appellants was in Everett during the night of January 8.   Both of the appellants registered and occupied the same room at the Bay View Hotel on January 9.   The whereabouts of each of the appellants on the occasion of the fire and the question of whether or not they, or either of them, set fire to the building unlawfully, were matters of fact for the jury.

By stipulation of the parties, the jurors were allowed to separate during that part of the trial permitted by statute.   At the close of the state's case, the appellants moved for a directed verdict.   The jury was excused from the court room, and immediately, in the absence of the jury, the motion was argued to and denied by the court.   The next morning, while the taking of the testimony was still in progress, counsel for appellants asked to make of record in the case a newspaper article published the evening before purporting to give an account of the court's ruling and views on the motion. The jury was excused from the court room, whereupon

counsel stated that the court's attention was called to the article because he understood that one or more of the jurors had read it, and suggested that the jurors be interrogated. Upon reading the article at that time, the court stated:

"I am satisfied of this, that if this jury read this article and there should be a verdict of guilty I would have to grant a new trial. Now, I do not know who gave this to the reporter, but is just about what I said. Now, there is no question about it but that if the jury read that, why the court might just as well have made the statement in the presence of the jury."

The newspaper article in question was as follows:

"DIRECTED VERDICTS IN CLAYPOOL CAUSE DENIED
BY ALSTON.

"Motions of the defense for directed verdicts of acquittal for defendants in the cause of the State against Edward and John Claypool, charged with the commission of arson in the second degree, were denied by Judge Guy C. Alston Thursday morning. Motions for dismissal through a directed verdict came after the State had rested its case.

" 'For any one to sit in this court room and hear this testimony and determine there is not sufficient evidence to show the unlawful burning or motive for defendants to burn, and the fact that it was burned for purpose of getting this insurance is beyond my conception,' stated Judge Alston, in ruling on the motions.

" 'The fire in question occurred on January 8, after a heavy rain,' the court stated in his ruling. 'These buildings were burned, buildings that were apart from each other. I find that it was wholly impossible for such a fire to spread.'

" 'In this building were 51 law books. There was found in the debris of the fire some remains of clothes and papers, but no trace of law books. This has been testified to by the fire chief. Law books will burn, the fire penetrating to some extent on either side, but there will be something left, it being impossible for the fire to destroy them completely.' "

The situation thus presented was an unfortunate one, for which neither the court nor any of the attorneys was at all to blame. Upon calling the jury into the jury box, the judge asked them separately if they had read the article or heard it read. Eight of them answered in the negative. The other four jurors answered, one that she had read it but could disregard it; another that he heard his son read it, but that it made no impression on him; another that he read it, that it made some impression on him, but that he thought he could disregard it; another that he read it; there was no further question to or statement by him. Thereupon the court stated that it was not the province of the court to influence them in arriving at a verdict as to the facts, that

"The court is required, however, to pass on any motions in the case. That, in passing on motions, the court simply sets forth the evidence which he thinks is sufficient to justify the court in submitting the case to the jury, and that article simply purported to set forth the evidence upon which the court concluded that the case should go to the jury for the jury to decide."

He further stated that he did not know how the matter got into the newspaper, and

"I am not saying whether or not that is a correct statement of what I said and I am not telling you whether or not it is; but it should not make any difference to you whether it is or not, for you and not the court decide the facts. Of course, at the time that statement was made, the state only had submitted its side of the case."

Upon the record on this point, we think it must be held that there was prejudicial error affecting the substantial rights of the appellants for which the motion for a new trial should have been granted.

In the case of *State v. Adamo,* 128 Wash. 419, 223 Pac. 9, we discussed the matter of a newspaper account

of a former trial of the case that in some unexplained way got into the jury room, and reviewed the authorities on that subject. Only one juror in that case took notice of the article, and that of the headlines only. In the deliberations of the jury he mentioned that fact to another juror. These two jurors made affidavits that what they learned from it in no manner influenced them. We held there was no prejudicial effect, stating:

"As indicated above, the headlines of the newspaper article only pretended to give the results of the former trial. Neither they nor the article itself pretended to express any opinion concerning the guilt or innocence of the appellant, nor did they in any way attack him. It was apparently a fair report of the result of the first trial."

Not so with the article in the present case. On the contrary, it purported to convey the opinion of the trial judge as to the facts in the case—a thing that jurors are rather keen to get. Of course, it was information that the trial judge would not give, in obedience to the provision of the state constitution; but notwithstanding the advice the court gave the jury after separately questioning them, and in spite of the protestations of three of the four jurors who had read the article or heard it read, we think it must be held that there was reversible error.

Other assignments that may be termed nominal have been considered by us without any result favorable to the appellants. For the error above mentioned, the judgment is reversed with directions to grant a new trial.

TOLMAN, C. J., PARKER, BRIDGES, and ASKREN, JJ., concur.