1999 UT 72

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeff D. MARTIN, Defendant and Appellant.**

No. 980129.

Supreme Court of Utah.

July 27, 1999.

Jan Graham, Att'y Gen., Marian Decker, Asst. Att'y Gen., Blake A. Nakamura, Susan L. Hunt, Salt Lake City, for plaintiff

Linda M. Jones, Stephanie Ames, Salt Lake City, for defendant

ZIMMERMAN, Justice:

¶ 1   This case comes to us on appeal from the conviction of Jeff Martin ("Martin") on one count of aggravated kidnaping, one count of rape, and three counts of forcible sodomy. All of these charges arise out of an incident involving Lorraine Egan ("Egan").   Martin claims the trial court committed error by: (i) denying Martin's motion for a new trial based on the discovery of new evidence; (ii) denying Martin's pre-trial motion to discover the identity of the individual Egan alleged raped her previously; and (iii) sealing Egan's mental health records before trial but after an in camera review.   We agree that the trial court committed error on the last two issues but not on the first.   We affirm in part and remand in part for further proceedings.

¶ 2   Because the legal issues raised by this case are not related to the underlying facts of the alleged rape, we need not discuss the facts in detail.   The relevant facts can be summarized as follows:   Martin and Egan encountered one another in a parking lot; both parties acknowledge that there was sexual contact; Martin alleges that all contact was consensual while Egan maintains that Martin kidnaped, raped, and sodomized her. After this series of events, Egan sought psychological counseling at the Family Support Center.   The Family Support Center created a file dealing with Egan's case.   Additionally, six months prior to this event, Egan claimed that she was raped by another individual. This allegation was never reported to the police.

¶ 3   Martin made numerous pre-trial motions, including a motion to compel discovery of all of Egan's mental health records and a motion to reveal the identity of the individual she alleged had previously raped her.   The court conducted an in camera review of

Egan's mental health records, disclosed a portion of them to Martin, and sealed the remaining records. It denied the motion to reveal the identity of the individual Egan alleged had previously raped her. The case went to trial on December 15, 1997, and the jury returned a guilty verdict on all counts.

¶4 Before Martin was sentenced, he reviewed a copy of the presentence investigation report. It disclosed that before trial, the prosecutor had told Egan that Martin had threatened her life. Martin filed a motion, contending that he made no such threat and that this warning may have biased Egan's trial testimony against him. A hearing was held. The trial court denied the motion for a new trial but struck all references to the alleged threat from the presentence investigation report, finding them factually unsupported. Martin was then sentenced to six years to life for the aggravated kidnaping conviction, five years to life for each of the three sodomy convictions, and another five years to life for the rape conviction. All sentences were to run concurrently.

■ ¶5 Turning to the first issue on appeal, Martin claims that the trial court erred in denying his motion for a new trial. We first state the standard of review: if a trial court has applied the correct legal standard, it has broad discretion in granting or denying a motion for a new trial. *See Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 940 (Utah 1993); *see also Child v. Gonda*, 972 P.2d 425, 428 (Utah 1998) (citing *State v. Harmon*, 956 P.2d 262, 265–66 (Utah 1998); *State v. Pena*, 869 P.2d 932, 938 (Utah 1994)). The legal standard to be applied when considering a motion for a new trial based on newly-discovered evidence is that the moving party must show that the evidence satisfies the following factors: (i) it could not, with reasonable diligence, have been discovered and produced at the trial; (ii) it is not merely cumulative; and (iii) it must make a different result probable on retrial. *See State v. James*, 819 P.2d 781, 793 (Utah 1991) (quoting *State v. Gellatly*, 22 Utah 2d 149, 449 P.2d 993, 996 (1969)).

¶6 The newly-discovered evidence upon which Martin relies is the fact that the prosecutor told Egan prior to trial of an alleged threat that Martin had made on her life. To grant a new trial under *James*, the trial court must find that all of the listed factors are present. While the trial court did not make explicit findings based on the *James* factors, it did conclude that Egan's testimony was not affected by the alleged threat. The trial court found that Egan had testified at a preliminary hearing prior to being informed of the threat and that Egan's testimony there was consistent with her testimony at trial.

■ ¶7 In cases where there is sufficient evidence in the record to support a ruling, this court will uphold it even where the trial court fails to make explicit factual findings. *See State v. Ramirez*, 817 P.2d 774, 787–88 (Utah 1991). The record in this case shows that Egan's testimony was unchanged by virtue of the warning about the alleged threat. This provides an adequate factual basis to support a conclusion that one of the *James* factors was not present, i.e., impeaching Egan's testimony at a new trial with the suggestion that it was a product of fear based on the communicated threat would not be likely to bring about a different result on retrial. Therefore, we find that the trial court did not abuse its discretion in denying the motion for a new trial.

■ ¶8 Martin also argues that the trial court's denial of his motion for a new trial violated his rights under Rule 16(a) of the Utah Rules of Criminal Procedure and the Due Process Clause of the Fourteenth Amendment. Because Martin did not request this evidence, Rule 16(a) does not apply. Rule 16(a) only requires the prosecutor to "disclose [evidence] to the defense upon request." Utah R.Crim. P. 16(a). Due process, on the other hand, requires that certain evidence be disclosed even without a request.

¶9 Under federal due process, a defendant's rights are violated in cases where the defendant does not specifically request exculpatory evidence and where the prosecutor fails to volunteer the evidence if "the omitted evidence creates a reasonable doubt that did not otherwise exist.... This means the omission must be evaluated in the context of the entire record." *United States v. Agurs,*

427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *see also Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Codianna v. Morris,* 660 P.2d 1101, 1106 (Utah 1983). While the evidence in this case appears to be inculpatory, it is considered exculpatory for *Brady* purposes because it could be used to impeach Egan. In *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the United States Supreme Court considered a prosecutor's failure to disclose evidence that the defense might have used to impeach a government witness. *See id.* at 676, 105 S.Ct. 3375. The Court held that impeachment evidence falls under the *Brady* rule. *See id.* Impeachment evidence, when disclosed and used effectively, may make the difference between conviction and acquittal. *See id.* (citing *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)).

¶ 10  On the record in this case, however, reasonable doubt is not created by virtue of the fact that Egan was warned before trial that Martin had threatened her life. It is clear that Egan's testimony did not change substantially from the preliminary hearing to the trial. Therefore, there is little basis to conclude that Martin would be able to impeach Egan with the threat evidence on retrial so as to create reasonable doubt. Therefore, Martin's due process rights were not violated.

¶ 11  We now turn to the second issue on appeal. Martin argues that the trial court erred in denying his motion to discover the identity of the person Egan alleged had previously raped her. Martin again relies on Rule 16(a) of the Utah Rules of Criminal Procedure and the Due Process Clause of the Fourteenth Amendment to the Federal Constitution.

■ ¶ 12  Martin filed a motion to disclose the identity of the prior rapist in July of 1997. The State responded to this motion by arguing that the information would not be admissible and therefore should not be discoverable. In a minute entry, dated August 18, 1997, the trial court denied the defendant's motion stating that if the results of the DNA test were to indicate that defendant was the most-likely perpetrator, it would revisit the defendant's motion. After the DNA test indicated that Martin was the most-likely perpetrator, the court, without making findings, filed a minute entry denying the motion to disclose the identity of the alleged prior rapist. We will begin by addressing Rule 16(a).

■ ¶ 13  Rule 16(a) provides in relevant part:

(a) Except as otherwise provided, the prosecutor shall disclose to the defense upon request the following material or information of which he has knowledge:

. . .

(4) evidence known to the prosecutor that tends to negate the guilt of the accused, mitigate the guilt of the defendant, or mitigate the degree of the offense for reduced punishment; and

(5) any other item of evidence which the court determines on good cause shown should be made available to the defendant in order for the defendant to adequately prepare his defense.

Utah R.Crim. P. 16(a)(4)-(5). A determination of "[w]hether the trial court abused its discretion in denying [a motion for discovery under rule 16(a) ] . . . depends entirely upon a determination of whether the prosecutor's failure to produce the requested information resulted in prejudice sufficient to warrant reversal." *State v. Knight,* 734 P.2d 913, 919 (Utah 1987). An error warrants reversal only if it is "harmful," i.e., "only if a review of the record persuades the court that without the error there was *a reasonable likelihood of a more favorable result* for the defendant." *Id.* (citations omitted). Stated differently, harmful error occurs "where the likelihood of a different outcome [in the absence of the error is] sufficiently high [so as] to undermine confidence in the verdict." *Id.* at 920.

¶ 14  The question, therefore, is first, whether Martin was entitled to the information and, second, if he was, whether that fact would create a sufficiently high likelihood of a different result such that our confidence in the outcome is undermined. While this determination ordinarily would be based on a

review of the record, where the error consists of the failure of the prosecution to provide a defendant with evidence, the record is not of much assistance in determining whether the defense was prejudiced. *See id.* For this reason, in non-disclosure cases, this court has held that the burden is on the State to persuade the court that the error did not unfairly prejudice the defense. *See id.* at 921.

¶ 15 The State addresses both prongs of the test by arguing that the defendant was not entitled to the evidence because the evidence would not have been admissible, and for the same reason, the defendant could not have been prejudiced by its wrongful denial. The State asserts that the admission of this evidence would be barred by rule 412 of the Utah Rules of Evidence. We find this argument unpersuasive.

¶ 16 Rule 412 states:

(a) *Evidence generally inadmissible.* The following evidence is not admissible in any criminal proceeding involving alleged sexual misconduct . . . :

(1) evidence offered to prove that any alleged victim engaged in other sexual behavior; and

(2) evidence offered to prove any alleged victim's sexual predisposition.

Utah R. Evid. 412. Nothing in Rule 412 would exclude evidence of an alleged rape victim's previous false allegations of rape. Evidence of a false accusation would be relevant to Egan's credibility. The refusal of the trial court to allow Martin the opportunity to uncover such evidence was error. It was not harmless error because such strong impeachment evidence would go to the central issue

of the case—which of the two parties to believe about the circumstances of this sexual contact. We therefore remand. The State must divulge to Martin the name of the individual Egan alleged had previously raped her and allow Martin the opportunity to search for new admissible evidence.[1]

¶ 17 If Martin finds any new admissible evidence, the trial court must then hold a hearing to determine if Martin is due a new trial.[2] In so doing, the trial court must decide whether there is a reasonable likelihood that the new evidence would lead a jury to an outcome more favorable to Martin. *See James,* 819 P.2d at 793. If so, and if the other factors laid out in *James* are present, as they appear to be, a new trial must be granted.

¶ 18 We turn to the final issue on appeal: the trial court's sealing of Egan's mental health records after its in camera review. Martin had made a pre-trial motion to discover all of Egan's mental health records. The court conducted an in camera review of the records, disclosed a portion of them to Martin, and sealed the remaining records. Martin argues that the trial court should not have left the records sealed, but had a duty to continuously revisit the records and to turn over to him any part of them that became material during the trial. Martin bases this claim on the federal due process clause.

¶ 19 In *Pennsylvania v. Ritchie,* 480 U.S. 39, 60, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the United States Supreme Court held that the duty to disclose material evidence is ongoing. Consequently, the trial court's sealing the mental health records in an envelope marked "Personal and Confidential" and nev-

1. The State also argues that under rule 16(a), the prosecutor cannot be required to identify the rapist because "[i]t is not possible on this record to determine whether the prosecutor had ascertained the identity of the prior alleged rapist." However, in opposing the motion to reveal the identity of the individual Egan alleged had previously raped her, both in its response to defendant's motion and its argument at the hearing, the State never argued that the prosecutor did not have that information. The State cannot now argue to this court that it did not have the information and use this as a basis to avoid the application of rule 16(a).

2. The trial court need not hold a lengthy hearing; it only needs to hear enough evidence to permit it to determine whether the admissible evidence would have likely brought about a more favorable result for Martin if introduced at trial. If a new trial is needed, it need not be unduly protracted by the admission of this evidence. *See State v. Larkin,* 27 Utah 2d 295, 495 P.2d 817, 821 (Utah 1972) (stating trial court has discretion to limit evidence on collateral matters). The trial court has ample power to assure that the focus of the case remains on the current charges, not the alleged prior rape. *See State v. Pena,* 869 P.2d 932, 938 (Utah 1994).

er reviewing them again to determine their materiality was error. According to *Ritchie,* "information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial." *Id.* It is unclear from the record whether this was done. We note for future reference that the problem might have been avoided had the trial court required the State to provide Martin with an index of the mental health records.[3] An index or privilege log would have allowed Martin to request additional documents throughout the trial if he believed that they had become material. Further, it would serve as a check on the prosecutor's and the judge's refusal to turn the documents over. Because the record does not indicate that the trial court conducted an ongoing review of this sealed file, we remand and direct the trial court to review the file in light of the actual trial proceedings and to determine if the file contains any information that is material and has a reasonable likelihood of producing a more favorable outcome for Martin if produced.

¶ 20  Affirmed in part. Remanded in part.

¶ 21  Chief Justice HOWE, Associate Justice DURHAM, Justice STEWART, and Justice RUSSON concur in Justice ZIMMERMAN's opinion.

---

**3.**  In *Salt Lake Legal Defender Ass'n v. Uno,* 932 P.2d 589, 591 (Utah 1997), we required the Legal Defender's Association to provide the State with an index of its privileged documents so that the State would be aware of the documents and would be in a position to request additional information.